MARK A. CRAWFORD, ESQ. (MAC4609)
THE CRAWFORD LAW FIRM, PC
244-16 JERICHO TURNPIKE
FLORAL PARK, NY 11001
TELEPHONE (516) 492-3147
FAX (516) 750-0111
EMAIL: MCRAWFORD@CRAWFORDLAWPRACTICE.COM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LINDA N. MITCHELL-DOUYON,                         Index No.: 18- 5682

                              Plaintiff,          **COMPLAINT AND JURY
                                                  DEMAND**

    -against-

FRESENIUS MEDICAL CARE N.A., AND SHIEL
HOLDINGS, LLC

                           Defendants.
-------------------------------------------------------------------X

Plaintiff LINDA N. MITCHELL-DOUYON ("Plaintiff"), by and through her attorneys, THE CRAWFORD LAW FIRM, PC., complaining of Defendants, FRESENIUS MEDICAL CARE N.A., and SHIEL HOLDINGS, LLC ("Defendants"). Alleges upon knowledge as to herself and her own actions, and upon information and belief as to all matters, as follows:

## INTRODUCTION

1.      This is an action against the Defendants to redress a pattern and practice of employment discrimination on the basis of race and sex in denial of equal pay and compensation in violation of the Fair Labor Standards Act of 1938, as Amended by the Equal Pay Act of 1963 ("Equal Pay Act"), 29 USC §206, *et seq.* and the New York State Equal Pay Act, N.Y. Labor Law §§194 et seq. ("NYEPA", 42 USC §§ 1981, 1981 (a) and the laws and Constitution of the State of New York, Title VII of the Civil Rights Act of

1964, as amended by the Civil Rights Act of 1991, 42 USC §§1981, 1981(a) and 2000e-2(a)(1) et seq.

2.      As a result of the Defendant's unlawful conduct, Plaintiff has suffered mental anguish, loss of enjoyment of life, emotional distress (both intentional and negligent), deprivation of her civil rights and loss of income.

### JURISDICTION AND VENUE

3.      This action is commenced pursuant to 42 USC §§ 1981, 1981 (a) and the laws and Constitution of the State of New York.  This lawsuit is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 USC §§1981, 1981(a) and 2000e-2(a), et seq. Jurisdiction is founded upon 28 USC §§1331, 1343(1-4), 2201, and 2202, the Fair Labor Standards Act of 1938, as Amended by the Equal Pay Act of 1963 ("Equal Pay Act"), 29 USC §206, *et seq.* and the New York State Equal Pay Act, N.Y. Labor Law §§194 et seq. ("NYEPA").   Jurisdiction is founded upon 28 USC §§1331, 1343(1-4), 2201, and 2202.  Plaintiff further invoke the supplemental jurisdiction of this Court to adjudicate pendant state law claims pursuant to 28 USC §1367.

4.      Venue is proper in this District under 28 USC §1391(b).

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.      Plaintiff timely filed with the Equal Employment Opportunity Commission (EEOC) a charge of discrimination against Defendants. Plaintiff received a Notice of the Right to Sue from the EEOC within 90 days of the filing of this complaint. (A copy of the right to sue letter is attached as Exhibit A).

**PARTIES**

6.      Plaintiff is a United States Citizen.

7.      Plaintiff is a black female.

8.      Plaintiff resides at 115-105 223rd Street, Cambria Heights, NY 11411.

9.      Defendant, Fresenius Medical Care N.A.is a foreign business corporation authorize to transact business in the State of New York and is the parent company of Shiel Holdings, LLC and was the employer of Plaintiff.

10.      Defendant, Shiel Holdings, LLC is a foreign business corporation authorize to transact business in the State of New York and is a subsidiary of Fresenius Medical Care N.A. and was the employer of Plaintiff.

11.      Defendant, Shiel Holdings, LLC employs more than fifteen (15) employees and is an employer as defined under Title VII of the Civil Rights ct, of 1964, the NYHRL, NY EXEC LAW §290-297 and Title 8 of the Administrative Code of the City of New York.

12.      Defendant Fresenius Medical Care N.A., employs more than fifteen (15) employees and is an employer as defined under Title VII of the Civil Rights ct, of 1964, the NYHRL, NY EXEC LAW §290-297 and Title 8 of the Administrative Code of the City of New York.

**INTRODUCTION**

13.      This is an action against the Defendants to redress a pattern and practice of employment discrimination and retaliation based on race and gender, pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 USC Section 1981 and 1981(a) and 42 USC 200e et seq, and the Fair Labor Standards Act of

3

1938, as Amended by the Equal Pay Act of 1963 ("Equal Pay Act"), 29 USC §206, *et seq.* and the New York State Equal Pay Act, N.Y. Labor Law §§194 et seq. ("NYEPA").

14.     Defendants wrongfully and unlawfully engaged in a pattern of discrimination and disparate treatment against the Plaintiff based upon her race and gender with regard to compensation and failing to rectify same when asked to do so.

15.     As a result of the Defendants' unlawful conduct, Plaintiff has suffered damages, deprivation of civil rights and loss of income.

## FACTUAL AND GENERAL ALLEGATIONS

16.     Plaintiff was in the medical field, involved in medical billing, for more than three years when she was hired by Shiel Medical Laboratory as an Account Executive/Service Representative in December of 2003.

17.     As an Account Executive/Service Representative, Plaintiff was required to get new business and service/maintain old business.

18.     Plaintiff also had to do trade shows, educational in-servicing of accounts, medical board meetings, quality assurance meetings, order supplies, donation requests, delivery missing diagnosis code sheets to clients, coordinate with the director of phlebotomy on technician complaints or concerns, new account set ups, electronic medical records interface set ups, information verification from clients., review statistical reports and scheduled client conferences among other things.

19.     Plaintiff worked for the company for fourteen (14) years during this time Plaintiff was the only African American female in the Sales department.

20.     Plaintiff reported directly to James Gordon, Reginal Sales Manager of Long Term Care Nursing.

21.     James Gordon's duties were the same as Plaintiff, except the Mr. Gordon negotiated contracts.

22.     Mr. Gordon held that positon for approximately twenty years.

23.     Plaintiff took over the duties of Mr. Gordon on or about February 23, 2017.

24.     On or about February 23, 2017 Vice President Jim Murphy informed Plaintiff that she would assume James Gordon's responsibilities and work load with a commission of 5% for every account, that Mr. Gordon was receiving, serviced starting March 2017, as an incentive to take on the additional responsibilities.

25.      Plaintiff was paid a base salary of approximately sixty-three thousand ($63,000.00) dollars and received no increase, even though she got an increased workload.

26.     At the time that Mr. Gordon held the position he was also paid a base salary and received 5% on the commission per account per month with a total of over 100 nursing home accounts.

27.     That during the pay period 04/09/2017- 4/22/2017 Plaintiff received a .5% commission for the month of March 2017 and was **not** given the 5% commission on all accounts as promised by Vice President Jim Murphy on February 23, 2017.

28.     When Plaintiff inquired of Vice President Jim Murphy, what happened to the 5% commission he promised her he advised her that he approved it and Senior Vice President Sal Prifieta overrode his approval without his knowledge.

29.     That Jim Murphy indicated that there was nothing he could do because his hands were tied.

30.     That Plaintiff was advised by Mr. Murphy that Senior Vice President Sal Prifieta was aware that the 5% commission was already offered to Plaintiff, by Mr.

Murphy, however, he was overriding it and there was nothing he could do about it because his hands are tied.

31.     That for the 14 years that Plaintiff worked for defendants she never received a commission prior to receiving the .5% in March 2017 and continued to receive the .5% commission through September 2018.

32.     That Plaintiff then learned, in March of 2017, that all the other white service representatives (Plaintiff's counterparts) were receiving a .5% commission for all accounts serviced since January of 2015 and that Plaintiff was intentionally excluded.

33.     That Plaintiff was informed by James Gordon in 2017 that he was aware that she was excluded and when he inquired, he was advised that Plaintiff was not "one of them" and she was not getting any and he should not worry about Plaintiff or say anything to Plaintiff.

34.     That Plaintiff throughout her 14 years of employment with Shiel, was the only African American female in the sales department and was grossly underpaid in comparison to her white counterparts.

35.     That Plaintiff complained to James Murphy about not getting the .5% from 2015 and not getting the 5% that Plaintiff was promised.

36.     That James Murphy informed Plaintiff that his hands were tied and he was sorry that it happened to her.

37.     That Plaintiff's duties included all the tasks of her position and the additional responsibilities of Mr. Gordon, her former boss.

38.     Plaintiff was advised that despite the additional responsibilities and work load, she would neither get a pay increase or the commission promised or the .5% back pay retroactive to 2015.

39.     That Defendants took no affirmative action to correct the pay disparity between Plaintiff and her counterparts.

40.     Plaintiff was terminated on or about December 31, 2017.

41.     That as a result of Defendants' unlawful discrimination Plaintiff suffered and sustained injuries including, but not limited to mental pain and anguish, pain and suffering, emotional distress (both intentional and negligent) and economic harm.

42.     That Plaintiff was denied the pay and commissions given to her male counterpart.

43.     That Plaintiff was systematically given lower pay and no commissions, while her white counterparts enjoyed a .5% commission for years.

44.     That Defendants knew about the disparity in income and the disparage treatment that Plaintiff received.

45.     That Defendants failed to take any corrective action.

## FIRST CAUSE OF ACTION
Race and Sex-Based Discrimination in Violation of
Title VII of the Civil Rights Act of 1964, *as amended*,
42 U.S.C. § 2000e-2(a), et seq.

46.     Plaintiff incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 45, above.

47.     Title VII of the Civil Rights Act of 1964, *as amended*, makes it unlawful for an employer, "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions,

or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e.

48.   Defendants discriminated against Plaintiff by treating Plaintiff differently from her male coworkers, including in account assignment and unequal wages and compensation, because of her sex.

49.   Defendants discriminated against Plaintiff by treating Plaintiff differently from her white coworkers, including in account assignment and unequal wages and compensation, because of Plaintiff's race.

50.   Plaintiff's sex was the determining factor and/or a motivating factor in Defendants' actions.

51.   Plaintiff's race was a determining factor and/or motivating factor in Defendants' actions.

52   As a direct, legal and proximate result of the discrimination, Plaintiff have sustained, and will continue to sustain, economic damages to be proven at trial.

53.   As a result of Defendants' actions, Plaintiff have suffered emotional distress, resulting in damages in an amount to be proven at trial.

54.   Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

55.   Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's' right to be free from discrimination based on sex.

56.   Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's' right to be free from discrimination based on race.

8

57.     Plaintiffs are entitled to reasonable attorneys' fees and costs of suit.

**SECOND CAUSE OF ACTION**
**EQUAL PAY ACT, 29 USC §206(d)**

58.     Plaintiff repeats and re-alleges each and every allegation set forth above in paragraphs of the complaint numbered "1-57" with the same force and effect as if set forth at length herein.

59.     During Plaintiff's period of employment with Defendants from the December 2003 to December 2017, Plaintiff was paid an initial base pay of $45,000.00 annually with fringe benefits and received an increase of $20,000.00 in 2015 with no commissions, which was less than her male counterparts.

60.     During the time of her promotion, to Mr. Gordon's position, Plaintiff performed work equal in skill, effort and with more responsibility to the work of her white male counterparts, who was paid at a higher base salary and would have garnered more of an increase as a result of their salary base and they also received the 5% commissions. This constitutes a violation of 29 USC §206 (d) (1).

61.     The differential in pay between Plaintiff and her male counterpart was not due to seniority, merit, quantity or quality production, but was due to color and gender.

62.     Defendants caused, attempted to cause, or contributed to the continuation of the pay rate discrimination based on gender in violation of the EPA.

63.     Defendants knew, and/or should have known, or showed a reckless disregard for, the fact that Defendants conduct was a violation of the EPA.

64.     Had Plaintiff been paid a salary equal to, inclusive of the 5% commission that the white male employee who performed equal work to the work she performed, she

9

would have received not less than $80,000.00, not including related bonus, benefits and pay increase rates.

65.      As a direct and proximate result of the Defendant's actions, Plaintiff has suffered injury and monetary damages including but not limited to past future loss of income, benefits, promotion and promotional opportunities, expenses, and costs and are entitled to all available legal and equitable remedies.

66.      Defendants' conduct was an intentional and willful violation of the EPA.

67.      Plaintiff is entitled to an award of liquidated damages within the meaning of EPA.

## THIRD CAUSE OF ACTION
## DISCRIMINATION ON THE BASIS OF RACE/GENDER IN VIOLATION OF 42 USC SECTION §§1981 AND 1981(a)

68.      Plaintiff repeats and re-alleges each and every allegation set forth above in paragraphs of the complaint numbered "1-67"with the same force and effect as if set forth at length herein.

69.      Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the Statute, namely she is a black female.

70.      Defendants are employers within the meaning of Title VII.

71.      Defendants intentionally discriminated against the Plaintiff because of her color and/or gender in violation of Title VII, by their disparate practice of denying her commissions while giving it to her white counterparts, thereby depriving her, without just cause, as a basis of her race, of her right to make and enforce contracts to the full and equal benefit of Defendants regulations, and, all laws and proceedings for the security of the

Plaintiff's employment, because of the Plaintiffs' race and gender, in violation of 42 U.S.C. §§1981 and 1981(a).

72.     Defendants' unlawful and discriminatory, disparate and disrespectful treatment against Plaintiff deprived her of her right to make and enforce contracts as is enjoyed by similarly situated whites, in violation of 42 U.S.C. §§1981 and 1981(a).

73.     Other similarly situated white employees were given commissions and appropriate pay increases.

74.     Defendants, their officers, agents, servants, and/or employees are responsible for the intentional and unlawfully discriminatory acts, conduct, treatment, practices, and/or policies, and for creating and/or fostering a work environment that deprived Plaintiff of her right to fair compensation and caused the Plaintiff to suffer and sustain damages.

75.     Defendants, their officers, agents, servants, and/or employees are, at all times herein mentioned, acting within the scope of their employment.

76.     Defendants knew of the discriminatory practices to the detriment of the Plaintiff.

77.     Defendants failed to take remedial and/or corrective action.

78.     Defendants unlawfully failed to counsel and/or adequately train its employees as to racial and/or gender sensitivity.

79.     As a direct result of Defendants' unlawful discrimination and conduct, Plaintiff was deprived of income, compensation, employment opportunities, and other benefits.

80.     As a result of Defendants' unlawful discrimination and conduct, Plaintiff has sustained injuries including, but not limited to, loss of income.

81.     As a result of Defendants' unlawful discrimination, conduct, practices, and/or policies, Plaintiff claims damages.

## FOURTH CAUSE OF ACTION
## NEW YORK EQUAL PAY ACT

82.     Plaintiff repeats and re-alleges each and every allegation set forth above in paragraphs of the complaint numbered "1-81" with the same force and effect as if set forth at length herein.

83.     This claim is also brought under the New York State Equal Pay Act, N.Y. Labor Law §§194 *et seq.*

84.     During Plaintiff's period of employment with Defendants from the December 2003 to December 2017, Plaintiff was paid an initial base pay of $45,000.00 annually with fringe benefits and received an increase of $20,000.00 in 2015 with no commissions, which was less than her white male counterparts.

85.     During the time of her promotion, to Mr. Gordon's position, Plaintiff performed work equal in skill, effort and with more responsibility to the work of her white male counterparts, who was paid at a higher base salary and would have garnered more of an increase as a result of their salary base and they also received the 5% commissions. This constitutes a violation of 29 USC §206 (d) (1).

86.     The differential in pay between Plaintiff and her male counterparts was not due to seniority, merit, quantity or quality production, but was due to color and gender.

87.     This was in violation of the NYEPA.

## PENDANT STATE CLAIMS

88.     Plaintiffs repeats and re-alleges each and every allegation set forth above in paragraphs of the Complaint numbered "1-87" to with the same force and effect as if set forth at length herein.

89.     Defendants unlawfully discriminated against Plaintiff and created and/or fostered a discriminatory work environment based upon her race and sex, in violation of the New York Human Rights Law, N.Y. Exec. Law §§290-297.

90.     Defendants unlawfully discriminated against Plaintiff and created and/or fostered a discriminatory work environment based upon her race and sex, in violation of Title 8 of the Administrative Code of the City of New York.

91.     Defendants, their officers, agents, servants, and/or employees are responsible for the intentional and unlawful discriminatory acts, conduct, treatment, practices, and/or policies that caused Plaintiff to suffer and sustain damages.

## DAMAGES

92.     As a direct and proximate result of the foregoing acts of the Defendants' Plaintiff sustained and suffered the following:

(a)     Damages in the form of back pay in such amount as the court will find Plaintiff have been unlawfully underpaid;

(b)     Liquidated damages in an amount equal to Plaintiff's actual damages; and

(c)     Violation of Plaintiff's rights pursuant to Title VII of Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991;

(d)     Violation of Plaintiff's rights pursuant to 42 U.S.C. §§1981 and 1981(a);

(e)      Violation of Plaintiff's rights pursuant to 42 U.S.C. §2000e, et. Seq.;

(f)   Violation of Plaintiff's rights pursuant to Title 8 of the Administrative Code of the City of New York and

(g)   Economic damages, including loss of income;

(h)   Reasonable attorney fees pursuant to 29 USC 216(b).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff LINDA N. MITCHELL-DOUYON requests the following relief jointly and severally as against all of the Defendants:

1.   Award compensatory damages in an amount to be determined at trial;

2.   Award punitive damages in an amount to be determined at trial;

3.   Disbursements, costs and attorneys' fees; and

4.   For such other further relief to this Court may seem just and proper.

### PLAINTIFF DEMAND TRIAL BY JURY

Plaintiff Demands Trial by Jury.

Dated: Queens Village, NY
       October 10, 2018

Respectfully submitted,

Mark A. Crawford (MAC 4609)
THE CRAWFORD LAW FIRM, PC
Attorneys for Plaintiff
LINDA N. MITCHELL-DOUYON
244-16 Jericho Turnpike
Floral Park, NY 11001
(516) 516 492-3147

14

Index No.:

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------X
LINDA N. MITCHELL-DOUYON,

                             Plaintiff,

    -against-

FRESENIUS MEDICAL CARE N.A., AND SHIEL
HOLDINGS, LLC,

                             Defendants.
--------------------------------------------------------------------X

---

## SUMMONS AND COMPLAINT AND JURY DEMAND

---

*THE CRAWFORD LAW FIRM, PC*
*244-16 JERICHO TURNPIKE*
*FLORAL PARK, NY 11001*
*TELEPHONE (516) 492-3147*
*FAX (516) 750-0111*